UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Banner Heart Hospital, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 14-cv-01195 (APM) |
| ) | |
| Sylvia M. Burwell, Secretary, ) | |
|    United States Department of ) | |
|    Health and Human Services, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

**I.**    **INTRODUCTION**

Under the Medicare program, hospitals and other providers are reimbursed for the cost of covered medical services they administer to eligible patients. The Centers for Medicare and Medicaid Services is the federal agency which manages the Medicare program. It makes payments to providers by using contractors, which are typically private insurance companies, known as "Medicare administrative contractors" or "fiscal intermediaries." In order to receive reimbursement, hospitals must submit to the contractors annual cost reports, which detail the covered services that they have provided during the year. The contractor then reviews the cost report, audits items in the report if necessary, and determines the total amount owed to the hospital for the year. The contractor then reimburses the hospital for the amount it is owed. If a provider of services is dissatisfied with the final reimbursement amount determined by the contractor, it can appeal that decision to the Provider Reimbursement Review Board ("the Board").

This case concerns the procedures that a provider must follow to satisfy the jurisdictional prerequisites for Board review. Plaintiffs are a group of non-profit organizations that own and operate acute care hospitals that participate in the Medicare program. They bring this action challenging the Board's final administrative decision that it did not have jurisdiction to review their challenges to certain Medicare regulations that govern the amount of "outlier" payments due to them. Outlier payments are for the treatment of extraordinarily expensive patient cases.

Plaintiffs' challenge to the outlier payment regulations, however, is not before the court. Rather, Plaintiffs here challenge only the Board's procedural decision to deny them expedited judicial review of the outlier regulations based on the Board's determination that it lacked jurisdiction to hear Plaintiffs' request. The Board concluded that it lacked jurisdiction because Plaintiffs had not complied with HHS's "self-disallowance" regulation. That regulation requires, as a precondition of Board review, that the provider "has preserved its right to claim dissatisfaction" by either (1) including in its cost report the specific items for which it seeks reimbursement, or (2) "self-disallowing" those specific items if the provider believes that the items are not allowable under Medicare rules or policy.

In industry parlance, "self-disallowance" means that a provider should report to the fiscal intermediary (*i.e.*, the contractor) a cost sought that it believes should be reimbursable but for the challenged Medicare regulations, but not ask for reimbursement of that specific cost because the challenged Medicare regulations impermissibly bar that type of claim. In other words, the provider must essentially challenge the validity of the Medicare regulation in its cost report to preserve its right to appeal. Plaintiffs challenge the "self-disallowance" regulation on numerous grounds, including that it violates the administrative appeal provision of the Medicare statute and the key Supreme Court precedent interpreting it, *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399 (1988).

Before the court is Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. Upon consideration of the parties' submissions, the court concludes that the Board's application of the "self-disallowance" regulation in this case was foreclosed by the Supreme Court's decision in *Bethesda*. As interpreted by the Court in *Bethesda*, the Medicare statute does not compel providers, such as Plaintiffs here, who are challenging the legality of a Medicare regulation, to self-disallow to preserve their right to appeal to the Board. Accordingly, the Board erroneously concluded that it lacked jurisdiction to hear Plaintiffs' request for expedited judicial review. The court therefore will grant Plaintiffs' Motion for Summary Judgment and deny Defendant's Cross-Motion for Summary Judgment, and will remand this matter to the Board for further proceedings consistent with this Memorandum Opinion.

## II.   BACKGROUND

### A.   Statutory and Regulatory Framework

#### 1.   The Medicare Statute

The Medicare statute, 42 U.S.C. § 1395 *et seq.*, establishes a federal health insurance program for the disabled and the elderly. A hospital or other provider of medical services participates in the Medicare program under a "provider agreement" with the Secretary of Health & Human Services—the named Defendant in this case. 42 U.S.C. § 1395cc. Part A of the Medicare program provides insurance for participating hospitals and pays them for covered medical services furnished to Medicare-eligible individuals. 42 U.S.C. §§ 1395c to 1395i-4.

Since 1983, Medicare has reimbursed hospitals for covered services through a prospective payment system ("PPS"). 42 U.S.C. § 1395ww(d); *see also UMDNJ-Univ. Hosp. v. Leavitt*, 539 F. Supp. 2d 70, 71-72 (D.D.C. 2008) (citations omitted). Under the PPS, payments to hospitals are made based on pre-determined flat rates for each of more than 450 diagnosis-related groups of

treatments and services. *See generally* 42 C.F.R. § 412 (PPS regulations). Put simply, a hospital records the diagnosis of each patient, treats that patient, and then is later reimbursed based on a previously-determined rate for that specific diagnosis. *Id.* The PPS system also allows for "outlier" payments, which are payments made to reimburse the treatment of particularly weak or ill patients that require more robust and, therefore, more expensive treatment. 42 U.S.C. § 1395ww(d)(5)(A); 42 C.F.R. §§ 412.80-412.86. As discussed below, Plaintiffs' challenge to these outlier regulations put in motion the events that led to this lawsuit.

To secure payment from the Centers for Medicare and Medicaid Services (CMS) for covered services, hospitals must submit an annual cost report to a contractor, which is typically a private insurance company, known as a "Medicare administrative contractor" or "fiscal intermediary" that acts as an agent for the Secretary. 42 U.S.C. § 1395h(a). An annual cost report sets out in detail the covered services provided by the hospital to Medicare-eligible patients. 42 C.F.R. §§ 413.20(c), 413.24(f). The contractor then reviews the cost report, audits items in the report if necessary, and eventually issues a written Notice of Program Reimbursement, which reflects its determination as to the total amount owed to the hospital for Medicare-covered services provided throughout the year. *See* 42 C.F.R. § 405.1803.

The Medicare statute provides an avenue for redress—an appeal to the Provider Reimbursement Review Board—to providers who are dissatisfied with the reimbursement amounts awarded by the fiscal intermediary. The jurisdictional prerequisites to Board review are set forth in 42 U.S.C. § 1395oo(a). That statute provides, as relevant here, that a provider of services may obtain a hearing before the Board regarding the results of the contractor's review of its cost report if such provider:

> (1)(A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary … as to the amount of total program reimbursement due the provider … for the period covered by such [cost] report …
>
> (2) the amount in controversy is $10,000 or more, and
>
> (3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination.

42 U.S.C. § 1395oo(a).

Once an appeal is properly before the Board, the Medicare statute provides that "[t]he Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) *even though such matters were not considered by the intermediary in making such final determination*." 42 U.S.C.A. § 1395oo(d) (emphasis added). The Supreme Court in *Bethesda* observed that "[t]his language allows the Board, once it obtains jurisdiction pursuant to subsection (a), to review and revise a cost report with respect to matters not contested before the fiscal intermediary. The only limitation prescribed by Congress is that the matter must have been 'covered by such cost report.'" 485 U.S. at 406. Our Court of Appeals has put it this way: "[O]nce Board jurisdiction pursuant to subsection (a) obtains, anything in the original cost report is fair game for a challenge by virtue of subsection (d)." *HCA Health Servs. of Oklahoma, Inc. v. Shalala*, 27 F.3d 614, 617 (D.C. Cir. 1994).

        2.       *The Claim Preservation Regulation*

In 2008, HHS promulgated 42 C.F.R. § 405.1835 (2008), which is the regulation at the heart of the parties' dispute in this case. Interpreting the jurisdictional requirements of Board review set forth in 42 U.S.C. § 1395oo(a), section 405.1835 provided, as pertinent here, that "[a] provider . . . has a right to a Board hearing . . . for specific items claimed for a cost reporting period" "only if" "[t]he provider has preserved its right to claim dissatisfaction." 42 C.F.R. § 405.1835(a)(1). The

5

regulation noted that a hospital could preserve that right in one of two ways. It could "include[ ] a claim for specific item(s) on its cost report for the period where the provider seeks payment that it believes to be in accordance with Medicare policy." *Id.* § 405.1835(a)(1)(i). Or, "where the provider seeks payment that it believes may not be allowable or may not be in accordance with Medicare policy (for example, if the intermediary lacks discretion to award the reimbursement the provider seeks for the item(s))," the provider could "self-disallow[ ] the specific item(s) by following the applicable procedures for filing a cost report under protest." *Id.* § 405.1835(a)(1)(ii).[1] Thus, according to the regulation, a hospital is only entitled to Board review if (1) it claimed reimbursement for the item at issue on the cost report, or (2) if the hospital believed that the payment was not allowable under the Medicare regulations, it self-disallowed that payment on the cost report and filed under protest. It is the second option that is at issue in this case.

### B. Factual Background and Procedural History

In 2009, Plaintiffs submitted their respective cost reports for the 2008 fiscal year. *See, e.g.*, Administrative Record (AR) at 428. Each cost report contained a space where a provider could identify "Protested Amounts (Nonallowable Cost Report Items)." *Id*. at 429. Plaintiffs left those spaces blank, meaning they did not challenge or self-disallow amounts not covered by the outlier regulations. *Id.* at 429, 444. According to Plaintiffs, they did not raise their challenge to the outlier regulations in the cost report, or seek specific reimbursement of those costs, because the fiscal

---

[1] Effective January 1, 2016, CMS no longer requires a provider to have preserved its right to claim dissatisfaction in either of the two ways set forth in the 2008 version of the regulation—at least not as part of its jurisdictional requirements. *See* 42 C.F.R. § 405.1835(a)(1) (2016). Instead, as part of rule-making undertaken in 2015, CMS "determined that the requirement that a provider either claim reimbursement for a specific cost, or expressly self-disallow the cost, in its cost report is more appropriately treated as a cost reporting requirement under sections 1815(a) and 1833(e) of the Act." 80 Fed. Reg. 70,298, 70,544 (Nov. 13, 2015). In other words, CMS now treats the requirement that providers either seek specific reimbursement or expressly self-disallow costs as part of its cost-reporting requirements, not as a jurisdictional prerequisite for Board review. Although the parties briefed the legal consequence, if any, of this regulatory change, the court did not need to consider the significance of the change to reach its decision.

intermediary was bound by CMS' regulations and thus lacked the ability to award the additional outlier costs sought. Transcript of Oral Argument Hearing, ECF No. 43 [hereinafter Tr.], at 12-15. Defendant, here, does not dispute that a fiscal intermediary must follow and apply CMS' regulation and does not have the authority to rule on the legality of the agency's regulations. Tr. at 36-37. Eventually, some years later, the Medicare contractors issued Notices of Program Reimbursement, which constituted their final determinations as to the amounts owed to Plaintiffs for services rendered during FY 2008. AR at 440-441; 451-452; 462-464.

In February 2013, Plaintiffs filed a timely consolidated appeal to the Board, raising for the first time their challenges to the outlier regulations and protesting the amounts not reimbursed under those regulations. *Id.* at 414-15. But, like a fiscal intermediary, the Board is also bound by CMS' regulations and lacks the authority to review legal challenges to the agency's regulations. *Bethesda*, 485 U.S. at 406 ("Neither the fiscal intermediary nor the Board has the authority to declare regulations invalid."); *see also* 42 U.S.C. § 1395oo(d) (describing the Board as having only "the power to affirm, modify, or reverse" the decision of the fiscal intermediary).

Plaintiffs therefore requested that the Board grant "expedited judicial review" of their challenge to the outlier regulations. AR at 36-37. The Board is authorized to grant such expedited review when "it is without authority to decide [a question of law or regulations relevant to the matters in controversy]." 42 U.S.C. § 1395oo(f)(1); *see also* 42 C.F.R. § 405.1842(a)(1) (2008) (providing that the Medicare statute "give[s] a provider the right to seek [expedited judicial review] of a legal question . . . if there is Board jurisdiction . . . and the Board determines that it lacks the authority to decide the legal question"). If the Board grants expedited judicial review, the provider may file a complaint in federal district court in order to obtain review of the legal question at issue. *See* 42 C.F.R. § 405.1842(g)(2).

On May 14, 2014, the Board declined Plaintiffs' request for expedited judicial review. AR at 1-8. Relying on the self-disallowance regulation, 42 C.F.R. § 405.1835(a)(1), the Board concluded that because Plaintiffs "failed to protest the outlier reimbursement at issue and that is the sole issue involved in these appeals, the Board lacks jurisdiction over the appeals …" *Id*. at 7. As a result, the Board dismissed Plaintiffs' case. *Id*. The Board's decision constituted an appealable final agency action, *id*. at 8; *see also* 42 U.S.C. § 1395oo(f), and Plaintiffs sought judicial review from this court on July 15, 2014, *see* Compl., ECF No. 1.

Plaintiffs contend that the Board's dismissal of their appeal based on the self-disallowance regulation violates both the Medicare statute, 42 U.S.C. § 1395oo, and the Administrative Procedure Act, 5 U.S.C. § 701 et seq. *Id*. at 17-18. Plaintiffs seek an order invalidating the self-disallowance regulation and finding that the Board had jurisdiction over Plaintiffs' appeal. *Id*. at 20. Plaintiffs also ask this court to retain jurisdiction over the case and to hear its merits—instead of remanding it to the Board for re-consideration of the request for expedited judicial review—because the Board lacks the authority to review the merits of their challenge to the outlier regulations. *Id*. at 19-21.

## II.     LEGAL STANDARD

In this case, the court is asked to evaluate HHS's interpretation of the Medicare statute. To do so, the court uses the two-step analysis set out by the Supreme Court in *Chevron*. *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). At the first step, the court reviews the statute to determine "whether Congress has directly spoken to the precise question at issue." *Id*. at 842. If the intent of Congress is clear, the court—and the agency—must give effect to the unambiguously stated intent of Congress. *Id*. at 842-43. If, however, Congress has not "directly addressed the precise question at issue… [and] the statute is silent or ambiguous

with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

To the extent the Board's ruling is based on an interpretation of the Medicare statute itself, the court must "examine the decision with the appropriate deference due to an agency that has been charged with administering the Statute." *HCA Health Servs. of Oklahoma, Inc. v. Shalala*, 27 F.3d 614, 617 (D.C. Cir. 1994) (citations omitted). However, while the agency enjoys deference in the area of its expertise—including its interpretation of statutes it is tasked with enforcing—the agency's interpretation of judicial precedent is entitled to no deference. *See New York New York, LLC v. N.L.R.B.*, 313 F.3d 585, 590 (D.C. Cir. 2002) (finding that when an agency board's decision "purport[ed] to rest on the Board's interpretation of Supreme Court opinions … the Board's judgment is not entitled to judicial deference").

### III.  DISCUSSION

#### A.  *Chevron* Step One

The court turns first to whether Congress "has directly spoken" to the issue in this case and, more precisely, whether the 2008 self-disallowance regulation conflicts with the plain language of section 1395oo of the Medicare statute. In endeavoring to discern Congress' intent, the court here does not write on a clean slate. Far from it. In 1988, the Supreme Court in *Bethesda* interpreted the very same section of the Medicare statute at issue here. It also addressed whether the plain language of the statute required a provider to first raise legal challenges to Medicare regulations with the fiscal intermediary to preserve its right of review before the Board. The court, therefore, begins its *Chevron* Step One analysis not with interpreting the statute itself, but with a review of *Bethesda*.

### 1. *Bethesda Hospital Association v. Bowen*

In *Bethesda*, the plaintiffs were hospitals that had challenged a regulation that disallowed certain claims for malpractice insurance premium costs. *See Bethesda*, 485 U.S. at 401. The hospitals included on their annual cost reports only the malpractice insurance costs that were permitted under the relevant regulation; the insurance costs in excess of the regulation were purposefully omitted, or self-disallowed. *Id.* The hospitals later timely requested a hearing before the Board in order to challenge the malpractice regulation and to seek reimbursement for the disputed costs (those in excess of the regulation). *Id*. at 402. As occurred here, the Board in *Bethesda* determined that it did not have jurisdiction to hear the claims because the hospitals had not included the contested claims on the cost reports and thus could not be "dissatisfied" with the contractor's determination, as required under section 1395oo. *Id*.; *see* 42 U.S.C. § 1395oo(a)(1)(A)(i) (requiring that a provider be "dissatisfied with a final determination" of a fiscal intermediary).

The Court posed the question before it as follows: "This case requires us to decide whether the Board may decline to consider a provider's challenge to one of the Secretary's regulations on the ground that the provider failed to contest the regulation's validity in the cost report submitted to its fiscal intermediary." *Bethesda*, 485 U.S. at 401. The Secretary contended that, although there was no express regulation so requiring, the statutory requirement that a provider be "dissatisfied" "necessarily incorporate[d] an exhaustion requirement." *Id.* at 404. The provider could not be "dissatisfied," the Secretary argued, if the intermediary awarded the sums actually requested in the cost report. *Id.* The hospitals, on the other hand, argued that "it would have been improper, or at least irregular, to submit a claim for cost reimbursement in a manner prohibited by

the regulations" and that it was proper to raise their legal challenge in the first instance before the Board. *Id.*

According to the Court, "[t]he plain meaning of the statute decide[d] the issue presented." *Id*. at 403. It found that the Secretary's reading of the statute was "strained" and "inconsistent with the express language of the statute." *Id.* at 404. Although the Court agreed that, under the statute, a provider's dissatisfaction with the amount of its total reimbursement was a precondition to the Board's jurisdiction, "it is clear . . . that the submission of a cost report in full compliance with the unambiguous dictates of the Secretary's rules and regulations does not, by itself, bar the provider from claiming dissatisfaction with the amount of reimbursement allowed by the regulations." *Id.*

The court went on to explain its reasoning in two key passages, the meaning of which the parties in this case heatedly dispute:

> No statute or regulation expressly mandates that a challenge to the validity of a regulation be submitted to the fiscal intermediary. Providers know that, under the statutory scheme, the fiscal intermediary is confined to the mere application of the Secretary regulations, that the intermediary is without power to award reimbursement except as the regulations provide, and that any attempt to persuade the intermediary to do otherwise would be futile.

*Id*. The court continued:

> Thus, petitioners stand on different ground than do providers who bypass a clearly prescribed exhaustion requirement or who fail to request from the intermediary reimbursement for all costs to which they are entitled under applicable rules. While such defaults might well establish that a provider was satisfied with the amounts requested in its cost report and awarded by the fiscal intermediary, those circumstances are not presented here. We conclude that petitioners could claim dissatisfaction, within the meaning of the statute, without incorporating their challenge in the cost reports filed with their fiscal intermediaries.

*Id.* at 404–05.

The Court's analysis went beyond subsection (a) of section 1395oo, explaining that its conclusion was "supported by the language and design of the statute as a whole." *Id.* at 405. The Court cited subsection (d), which provides that, once the Board obtains jurisdiction under

11

subsection (a), it can revise a matter on the cost report even if the contractor did not consider that matter.  *Id*. at 405-06.  The Court observed that "[t]he only limitation prescribed by Congress [under subsection (d)] is that the matter must have been 'covered by such cost report,' that is, a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed."  *Id.* at 406.

The Court also found that its reading was supported by the fact that the statute grants "the Board a statutory function that the fiscal intermediary does not have."  *Id.*  Specifically, subsection (f)(1) provides that before a provider is able to obtain judicial review, the Board must first make a determination that it is without authority to decide the matter because the provider's claim involves a legal challenge to regulations or policy.  *Id.*; *see also* 42 U.S.C. § 1395oo(f)(1).  The Court reasoned:  "Under this statutory scheme, requiring submission of the regulatory challenge to the fiscal intermediary is quite unnecessary.  The Board has a role in shaping the controversy that is subject to judicial review; the fiscal intermediary does not."  *Id.* at 407.

Ultimately, the Court held that "the plain language of the statute demonstrates that the [Board] had jurisdiction to entertain this action."  *Id.* at 408.

### 2. *This Court's Interpretation of* Bethesda

The similarities between this case and *Bethesda* are self-evident.  In both cases, the providers did not preview their legal challenges to CMS regulations before the fiscal intermediary. In both cases, the parties conceded that neither the fiscal intermediary nor the Board had any authority to review the providers' legal challenges.  And, in both cases, as a result of the providers' failure to assert their challenges to the regulations before the fiscal intermediary, the Board concluded that it lacked jurisdiction over the appeal.  The controlling statute, section 1395oo, reads as it did in 1988.  The only material difference then between the two cases is that in *Bethesda* the

Secretary argued that section 1395oo "necessarily incorporates an exhaustion requirement," *id.* at 404, whereas here an actual regulation requires providers to present even pure legal challenges to an intermediary as a condition of the Board's jurisdiction, *see* 42 C.F.R. § 405.1835(a)(1). The parties take opposing views as to whether that difference takes this case outside of *Bethesda*.

Defendant argues that the fact that a regulation now exists countenances the exhaustion requirement that the Supreme Court said was not "necessarily incorporated" into the Medicare statute. Def.'s Cross-Mot. for Summ. J, ECF No. 29 [hereinafter Def.'s Mot.], at 20 ("Nowhere did the [*Bethesda*] Court imply that the Secretary 'could not impose' by regulation, an exhaustion requirement. Instead, the Court applied the statutory language in light of the fact that the Secretary had not yet done so."). To support its reading of *Bethesda*, Defendant points to the Court's statements—which Defendant concedes are dicta—that (1) "[n]o statute or regulation expressly mandates that a challenge to the validity of the regulation be submitted to the fiscal intermediary," and (2) that "petitioners stand on different ground than do providers who bypass a clearly prescribed exhaustion requirement." *Id.* at 17 (quoting *Bethesda*, 485 U.S. at 404-05). Based on those statements, Defendant argues that the Court in *Bethesda* essentially invited the Secretary to adopt a formal exhaustion requirement and, now that she has done so, *Bethesda* does not control the outcome of this case. *Id*. at 18-21.

Plaintiffs, on the other hand, read *Bethesda* to have foreclosed any exhaustion requirement, even by regulation, for pure legal challenges to Medicare regulations. *See* Pls.' Mot. for Summ. J. ECF No. 23 [hereinafter Pls.' Mot.], at 24; Pls.' Opp'n to Def.'s Cross-Mot. for Summ. J., and Reply in Supp. of Pls.' Mot. for Summ. J., ECF No. 32 [hereinafter Pls.' Opp'n], at 3. Plaintiffs focus on those portions of *Bethesda* that emphasize the futility of presenting a legal challenge to an intermediary in light of the fact that the intermediary has no authority to entertain or decide such

challenges. *Id*. at 5 (asserting that presenting a legal challenge to a fiscal intermediary is "equally futile now as it was before *Bethesda* because the contractor cannot act on the challenge").

The court agrees with Plaintiffs' reading of *Bethesda*. The Court in *Bethesda* based its decision on the "plain meaning of the statute," *Bethesda*, 485 U.S. at 403, and its "language and design . . . as a whole," *id.* at 405. *See also id.* at 406 (stating that the "express language of subsection (a) requires the result we reach in the present case"), 407 (stating that "under this statutory scheme" "requiring submission of the regulatory challenge to the fiscal intermediary is quite unnecessary"), and 408 (holding that "the plain language of the statute demonstrates" that the Board had jurisdiction). The Court did not, as Defendant contends, "appl[y] the statutory language in light of the fact that the Secretary had not yet" adopted a regulation. Defs.' Mot. at 20. Defendant's argument is curious, as it seems to imply that the Court's interpretation of the statute would have been different if, in 1988, an express exhaustion requirement had been in place. But Defendant does not explain how the presence of such a regulation would have negated the Court's "plain reading" of section 1395oo. Indeed, Defendant cites no rule or principle of statutory construction that would permit a court to read a statute differently because of a regulation's existence. A reading of the "plain text" depends on the text of the statute, not a regulation implementing that statute.

Defendant's reading of *Bethesda* simply does not see the forest through the trees. Yes, the Supreme Court said that there was "no statute or regulation that expressly mandates" exhaustion and that "petitioners stand on different ground than do providers who bypass a clearly prescribed exhaustion requirement." But those statements were embedded within a broader discussion regarding the futility of submitting a legal challenge to a fiscal intermediary that can do nothing about it. In between the two sentences that Defendant relies upon, the Court wrote: "Providers

14

know that, *under the statutory scheme*, the fiscal intermediary is confined to the mere application of the Secretary's regulations, that the intermediary is without the power to award reimbursement except as the regulations provide, and that any attempt to persuade the intermediary to do otherwise would be futile."  485 U.S. at 404 (emphasis added).  Thus, read in context, when the Supreme Court observed that "petitioners stand on different ground than do providers who bypass a clearly prescribed exhaustion requirement," it was referring to an exhaustion requirement that, sensibly, would compel providers to present those claims to the intermediary that the intermediary actually had the power to address.

That reading is buttressed by the very next sentence, which states: "While such defaults might well establish that a provider was satisfied with the amounts requested in its cost report and awarded by the fiscal intermediary, *those circumstances are not presented here.*"  *Id*. at 405 (emphasis added).  In other words, when a provider fails to present a claim in its cost report that an intermediary can address, it can be deemed "satisfied" with the amounts requested in the cost report and awarded by the intermediary.  But where the intermediary has no authority to address a claim, such as when a pure legal challenge to a regulation is at issue, a provider cannot be deemed to be "satisfied" simply because such challenge is not reflected in the cost report.  Satisfaction cannot be imputed from a provider's silence when everyone knows that it would be futile to present such claim to the intermediary.

The Seventh Circuit has adopted this interpretation of section 1395oo and *Bethesda*.  In *Little Company of Mary Hospital and Health Care Centers v. Shalala*, 165 F.3d 1162 (7th Cir. 1999), the court, citing to *Bethesda*, said the following about exhausting remedies and section 1395oo:  "But while the statute is curiously worded, the intent is plain that the provider must give the intermediary a first shot at the issue, *provided the issue is within the intermediary's*

15

*competence*[.]" *Id.* at 1165. Because the issue in *Little Company of Mary Hospital* was one "securely within the limited competence of the fiscal intermediary," and because the provider had failed to raise it with the intermediary, the court ruled that the provider had failed to demonstrate dissatisfaction, as required under section 1395oo. *Id*. at 1166.

Finally, Defendant's reading of *Bethesda* also cannot be squared with the Supreme Court's emphasis on the Board's statutory role that enables it to trigger judicial review. Again, neither the Board nor the intermediary has the authority to address challenges to the validity of a regulation. Unlike the intermediary, however, the statute does confer on the Board an important role—granting providers the right to seek judicial review. *Bethesda*, 485 U.S. at 406. "Under this statutory scheme," the Court observed, "requiring submission of the regulatory challenge to a fiscal intermediary is quite unnecessary." *Id.* at 407. Defendant here has done precisely what the Court determined was "quite unnecessary"—it has required submission of a regulatory challenge to the fiscal intermediary as a precondition of the Board's jurisdiction.

Accordingly, the court holds that, under *Bethesda*—and at *Chevron* Step One—the Secretary's self-disallowance regulation, as applied to Plaintiffs' specific regulatory challenge, conflicts with the plain text of section 1395oo. The Board therefore erred in ruling that it lacked jurisdiction to hear Plaintiffs' challenge to the outlier regulations. *See id.* at 408 (concluding that the "Board had jurisdiction to entertain this action").

**B.     The Board's Non-Mandatory Jurisdiction**

Defendant offers an alternative theory to defend the self-disallowance regulation and the Board's decision not to hear Plaintiffs' challenge. According to Defendant, courts have ruled that the Board's jurisdiction "'is not mandatory,'" and that the Secretary relied on those decisions for the proposition that "the agency has flexibility to deny Board review with respect to items omitted

16

form the cost report, even if there is a jurisdictional basis under § 1395oo for the Board to review those items." Defs.' Mot. at 28 (quoting 73 Fed. Reg. at 30,197). Thus, the Defendant argues, "even if the challenged rule were not valid as an interpretation of § 1395oo, the rule would be valid under the agency's general authority to promulgate regulations 'for the efficient administration of the Medicare program.'" *Id.* at 28-29 (quoting 73 Fed. Reg. at 30,197, citing §§ 1102(a) and 1871(a) of the Social Security Act, codified as 42 U.S.C. §§ 1302(a), 1395hh(a)).

Defendant's alternative argument fails, however, for the simple reason that it is not a rationale on which the Board based its determination here. The Board stated in its opinion that it had denied Plaintiffs' regulatory challenge because it lacked jurisdiction to hear it, not because it was exercising its discretion to decline jurisdiction. AR at 7 ("Thus, as the Providers failed to protest the outlier reimbursement at issue and that is the sole issue involved in these appeals, the Board lacks jurisdiction over the appeals … and hereby dismisses the Providers from case."). Defendant cannot now justify the Board's decision on an entirely different rationale than the one that the Board itself offered. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ("'[P]ost hoc' rationalizations . . . have traditionally been found to be an inadequate basis for review.").[2]

In short, the Secretary here has promulgated a rule that interprets the jurisdictional requirements of the Medicare statute, and the Board applied that rule in deciding that it lacked

---

[2] The court thus need not take a position on whether, as some courts seem to have concluded, the Board has the authority, in its discretion, to decline jurisdiction even when a provider satisfies the statutory conditions. *See Mainegeneral Medical Ctr. v. Shalala*, 205 F.3d 493, 501 (1st Cir. 2000) (stating that "it would be entirely permissible for the Board to conclude, as a matter of policy, not to hear this claim"); *UMDNJ-Univ. Hosp. v. Leavitt*, 539 F. Supp. 2d 70, 78-79 (D.D.C. 2008) (remanding to the Board for it to decide "whether it will hear these claims as a matter of discretion, not statutory jurisdiction") (citing *Mainegeneral*, 205 F.3d at 501).

jurisdiction to hear Plaintiffs' appeal. That rule, as applied to these Plaintiffs, cannot be maintained under *Bethesda*.[3]

### C.     Remedy

Having decided that Board has jurisdiction over Plaintiffs' challenge to the outlier regulations, the court turns to the question of the proper remedy. Plaintiffs urge the court not to remand the case to the Board to determine Plaintiffs' request for expedited judicial review. Pls.' Mot. at 43. In short, Plaintiffs argue that a remand would be a waste of time, as "a remand would be pro forma and only delay the inevitable grant of [expedited judicial review] for the Hospitals to pursue their appeals in court." Pls.' Reply at 25. Defendant, on the other hand, contends that "when a court sets aside agency action, the only proper course is to remand to the agency for further action consistent with the correct legal standard." Def.'s Mot. at 45.

The court agrees with Defendant. Our Court of Appeals has said that, "'under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards.'" *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (quoting *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999). Thus, this court only has the authority to vacate the Board's decision, and nothing more. *See id.* Section 1395oo(f) plainly provides that the Board in the first instance must decide whether to grant expedited review. *See* 42 U.S.C. § 1395oo(f).[4]

---

[3] Because the court concludes that the self-disallowance regulation promulgated by the Secretary, as applied to Plaintiffs, violated the Medicare statute as interpreted by the Supreme Court in *Bethesda*, the court need not—and does not—discuss the parties' remaining arguments.

[4] In their Complaint, Plaintiffs asked the court to "[i]nvalidat[e]" the self-disallowance regulation. Compl. at 20. The court, however, declines to do so, because its decision is limited only to the regulation's application to providers who, like Plaintiffs, seek to assert a legal challenge to a regulation or policy that cannot be addressed by a fiscal intermediary. The question whether the self-disallowance regulation is unlawful in all its applications is not before the court and, for that reason, the court will not vacate the regulation.

Plaintiffs' reliance on the proceedings in *Lee Memorial Hospital v. Sebelius*, No. 1:13-cv-00643 (D.D.C.), *see* Pls.' Mot. at 43 (citing Order at 2, ECF No. 4), is inapposite. There, unlike here, it appears that the Secretary actually agreed that a remand was not required. *See id.*, Def.'s Resp. to Order to Show Cause, ECF No. 37, at 3 ¶ 5 (attaching proposed order that the court ultimately entered).

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is granted and Defendant's Cross-Motion for Summary Judgment is denied. This matter is remanded to the Board for further proceedings consistent with this Memorandum Opinion. A separate order accompanies this Memorandum Opinion.

Dated: August 19, 2016

Amit P. Mehta
United States District Judge